IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ANTHONY S., <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:17-cv-01069-BCW <br><br> Magistrate Judge Brooke C. Wells |

This case is before the undersigned following the parties' consent under Federal Rule of Civil Procedure 73.[1] Plaintiff Anthony S.[2], alleged disability due to bilateral sensorineural hearing loss, obstructive sleep apnea, post-traumatic stress disorder (PTSD), depression and mild neurocognitive disorder.[3] Plaintiff applied for disability insurance benefits in 2016.[4] A hearing was held before an Administrative Law Judge (ALJ) on April 2017, with Plaintiff being represented by counsel.[5] On June 13, 2017, the ALJ issued an unfavorable decision.[6] The Appeals Council denied review of the ALJ's decision.[7] This appeal followed. Having further considered the record and case law, this court remands the decision.

---

[1] ECF No.17.

[2] Based on privacy concerns regarding personal information, the court does not use Plaintiff's last name. Privacy concerns are a part of many of the Federal Rules. See Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. P. 49.1; Fed. R. Bankr. P. 9037.
[3] Tr. 21.
[4] Tr. 18, 201-210.
[5] Tr. 38-90.
[6] Tr. 18-33.
[7] Tr. 1-6.

## STANDARD OF REVIEW

Because the Appeals Council denied claimant's requested review, the ALJ's decision is considered the Commissioner's final's decision for purposes of this appeal.[8] The court reviews the ALJ's decision to determine whether the correct legal standards were applied and whether factual findings are supported by substantial evidence in the record.[9] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."[11] In considering claimant's appeal the court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."[12]

## ANALYSIS

Plaintiff raised two objections to the ALJ's analysis in his opening brief.[13] First, Plaintiff argued the ALJ did not sustain his burden of showing a significant number of jobs exist that he can perform because the jobs cited in the ALJ's decision have greater noise levels than allowed by his residual functional capacity (RFC). Second, Plaintiff averred the ALJ committed legal error by failing to mention and/or address the medical opinion of a psychiatric nurse practitioner in his decision.

The court will begin its analysis by providing a brief background on the Plaintiff. Plaintiff is a combat veteran. He was deployed in Afghanistan from 2003-2004 as a General

---

[8] *Doyal v, Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003); 20 C.F.R. § 404.981.
[9] *See Doyal*, 331 F.3d at 760; *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006).
[10] *Doyal*, 331 F.3d at 760.
[11] *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988).
[12] *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).
[13] ECF No. 20 at 1-2.

Mechanic.[14] He was exposed to several incidents and blasts on a few occasions.[15] He also served on "Fire Bases" where he was shot in combat and witnessed colleagues being killed.[16] Plaintiff has been treated by the Veteran's Administration for sensorineural hearing loss, PTSD, depression and neuro-cognitive disorder.[17] Plaintiff has been wearing bilateral hearing aids for a number of years.[18] Plaintiff has a 70% combined service-connected disability, and is paid at the 100% rate because he is considered unemployable.[19]

Here, at Step 1, the ALJ found Plaintiff had not engaged in substantial gainful activity for a continuous twelve-month period.[20] At Step 2, the ALJ concluded Plaintiff has the following severe impairments: bilateral sensorineural hearing loss, obstructive sleep apnea, PTSD, depression and mild neurocognitive disorder.[21] At Step 3, the ALJ concluded Plaintiff does not have an impairment or combination of impairments that meets the level of severity required under 20 C.F.R. Part 404.[22] At Step 4, the ALJ determined Plaintiff has the RFC to

> perform a full range of work at all exertional levels but with the following limitations: He is able to work in a quiet work environment where he is not required to work on a telephone. He should avoid concentrated exposure to hazards. He is able to perform simple, unskilled work in a low stress environment . . . that requires contact with the public or coworkers for no more than one-third of an eight-hour day.[23]

Plaintiff alleges the ALJ erred at Step 5 by determining Plaintiff is capable of performing "other work."[24] Specifically, the ALJ found Plaintiff was not disabled because he could perform the

---

[14] Tr. 621.
[15] Tr. 378.
[16] Tr. 629.
[17] Tr. 21.
[18] Tr. 24.
[19] Tr. 158-161.
[20] Tr. 21.
[21] *Id.*
[22] *Id.* at 22.
[23] Tr. at 23-24.
[24] *See* ECF No. 20 at 4.

jobs identified by the vocational expert (VE).[25]

Pursuant to the VE's testimony, the ALJ determined Plaintiff could perform the following three positions: (1) marker, with 71,000 jobs available nationally; (2) mail clerk, with 80,000 jobs available nationally; and (3) kitchen helper, with 139,000 jobs available nationally.[26] The VE further testified the number of marker position would be reduced by 60 percent, the number of mail clerk positions would be reduced by 70 percent, and the number of kitchen helper positions would be reduced by 50 percent due to Plaintiff's social interaction and hazard limitations.[27]

Plaintiff argues the ALJ's RFC finding contains a limitation that is inconsistent with the jobs identified by the VE.[28] Social Security Ruling (SSR) 00-4 states:

> When there is an apparent unresolved conflict between VE [vocational expert] or VS [vocational specialist] evidence and the DOT [Dictionary of Occupational Titles], the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.[29]

In his hypothetical to the VE, the ALJ stated Plaintiff would "have to work in a quiet atmosphere in order to accommodate the hearing deficits, meaning probably wouldn't be working on phones like a telemarketer or in a noisy open office atmosphere, would have to be more in a quiet setting like in the individual office."[30] The ALJ gave "great weight" to the opinion provided by audiologist, Ms. Maggie Clarke.[31] Dr. Clarke found as follows:

> Word recognition scores were excellent (90%) in the left ear and good (80%) in the right ear, indicating that amplification may improve Anthony's ability to understand speech.

---

[25] Tr. 32-33.
[26] *Id.*
[27] Tr. 33.
[28] ECF No. 20 at 4-8.
[29] 2000 WL 1898704, at *2.
[30] Tr. 83.
[31] Tr. 30-31.

Anthony was able to understand speech when face-to-face with the speaker in a quiet background while wearing hearing aids, however when facing away from the speaker and without his hearing aids he had great difficulty. This is likely worsened in the presence of background noise making it very difficult to comprehend speech in noisy environments.[32]

Plaintiff argues, however, that based on the "Noise Intensity Level" information found in the DOT descriptions for each of the three jobs identified by the VE, he cannot perform any of the three jobs.[33] Plaintiff correctly points out the Noise Intensity Level for marker and mail clerk is "3" or "Moderate," and the level for kitchen helper is "4" or "Loud."[34] In response, the Commissioner did not dispute that if the DOT states the Noise Intensity Level of a job is greater than "2" (the level characterized as "Quiet"), and the DOT indicates the job requires comprehending others' speech, Plaintiff could not perform that particular job.[35] The occupational information for both mail clerk and kitchen helper indicate "Hearing" is required "Occasionally-Exists up to 1/3 of the time."[36] Thus, the Commissioner concedes the positions of mail clerk and kitchen helper appear to conflict with the ALJ's RFC finding, and may require further analysis at the Step 5.[37] However, the Commissioner also argued the occupational information for the marker position indicates that talking and hearing is not required, and thus Plaintiff's hearing limitations would not prevent him from performing that job, even if a "Moderate" or "3" noise intensity level is inconsistent with the ALJ's RFC finding.[38]

In reviewing the transcript of the hearing, it appears the ALJ made no specific mention in his hypothetical or RFC about "work not requiring talking or hearing." The hypothetical and

---

[32] Tr. 706.
[33] ECF No. 20 at 5-6.
[34] *Id.*
[35] ECF No. 22 at 6.
[36] *Id.*
[37] *Id.*
[38] *Id.*

RFC both simply state: "He is able to work in a quiet work environment where he is not required to work on the telephone."[39] When the ALJ asked the VE if her testimony was consistent with the DOT, her response was it was "with a couple exceptions."[40] The only limitations discussed by the VE were "absenteeism, off task behavior [and] jobs describing low stress or low production."[41] There was no mention of "talking or hearing." Pursuant to the express language of SSR 00-4p, cited above, an ALJ may not rely upon a VE's testimony which conflicts with the DOT. And, as admitted by the Commissioner, none of the jobs provided by the VE meet the noise intensity level of "2" or "Quiet."

To determine whether there is a conflict between a VE's testimony and the DOT, SSR 00-4p places an affirmative duty on the ALJ to ask the VE at the hearing if his/her testimony is consistent with the DOT. SSR 00-4 provides as follows:

> When a VE or VS provides evidence about requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE or VS if the evidence he or she has provided conflicts with the information provided in the DOT; and if the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.[42]

Here, the ALJ followed the requirements of SSR 00-4 when he asked the VE if her testimony was consistent with the DOT.[43] The VE testified: "It is Your Honor, with a couple exceptions."[44] But the VE also made clear that if these limitations were not removed from the ALJ's original hypothetical Plaintiff would not be able to perform his past relevant work,

---

[39] Tr. 23-24, 83-85.
[40] Tr. 87.
[41] *Id.*
[42] SSR 00-4p, 2000 WL 1898704, at *4.
[43] Tr. 87.
[44] *Id.*

because all of Plaintiff's past work was skilled and not considered low stress.[45] However, there was no explanation sought or provided about why the three jobs proposed would be appropriate if they exceeded the Noise Intensity Level of 2 ("Quiet"). Nowhere in her testimony did the VE discuss the noise levels in the jobs cited or that the noise levels described in the DOT were inconsistent with her testimony. Thus, it appears the requirements of the marker position, and the other two positions (which all exceed the Noise Intensity Level of "2" or "Quiet"), are inconsistent with the ALJ's hypothetical question and RFC.

Plaintiff also argues the ALJ's decision is defective because it does not address a Mental Residual Functional Capacity Questionnaire (Questionnaire), dated August 20, 2016, issued by a psychiatric nurse practitioner, Ms. Jacobs. Plaintiff claims the ALJ did not see or "consider" the Questionnaire because it was buried in Exhibit 10E, with non-medical exhibits. The court notes Plaintiff was represented by counsel at the hearing, and presumably it was Plaintiff's counsel who prepared the submissions, including exhibits, for the ALJ. This court did not find evidence the ALJ did not "see" or "consider" Exhibit 10E. In fact, during the hearing Plaintiff's counsel highlighted the exhibit to the ALJ and explained, "it is mislabeled. It's a residual functional capacity questionnaire completed by his nurse practitioner."[46] Simply because the ALJ did not expressly cite the Questionnaire in his decision does not establish he never saw it—he simply may not have relied on it because it appears to conflict with other medical evidence in the record. Nevertheless, the Court did not review this argument for error, as it is remanding the case on the conflict under SSR 00-4.

---

[45] Tr. 84.
[46] Tr. 44.

Because the court is convinced the conflict under SSR 00-4 is not harmless error, it reverses and remands the decision on this ground.

IT IS SO ORDERED.

DATED: this 28th day of March, 2019.

Brooke C. Wells
U.S. Magistrate Judge